1               UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
2

3   ------------------------------------------------------------
                             )
   United States of America,    )  File No. 15CR340
4                         )     (JRT/LIB)
         Plaintiff,      )
5                         )
   vs.                  )  Minneapolis, Minnesota
6                         )  September 6, 2016
   Danny James Heinrich,       )  1:00 P.M.
7                         )
         Defendant.      )
8   ------------------------------------------------------------

9

10      BEFORE THE HONORABLE CHIEF JUDGE JOHN R. TUNHEIM
             UNITED STATES DISTRICT COURT
               **(CHANGE OF PLEA)**

11

12  APPEARANCES
   For the Plaintiff:      United States Attorney's Office
                      STEVEN SCHLEICHER, AUSA
13                    JULIE E. ALLYN, AUSA
                    300 South Fourth Street
14                    Suite 1005
                    Minneapolis, MN 55415
15

16   For the Defendant:      Office of the Federal Defender
                    KATHERIAN ROE, ESQ.
                    REYNALDO ALIGADA, JR., ESQ.
17                    300 South Fourth Street
                    Suite 107
18                    Minneapolis, MN 55415

19   Court Reporter:         KRISTINE MOUSSEAU, CRR-RPR
                    1005 U.S. Courthouse
20                    300 South Fourth Street
                    Minneapolis, MN 55415
21

22

23

24      Proceedings recorded by mechanical stenography;
   transcript produced by computer.

25

```
 1                                           1:00 P.M.

 2

 3                        (In open court.)

 4            THE COURT:  You may be seated.

 5            You may go ahead.

 6                     (Defendant enters.)

 7            THE COURT:  All right.  Good afternoon.  This is

 8  Criminal Case Number 15-340, United States of America

 9  versus Danny James Heinrich.  We are here today for a

10  change of plea.

11            Counsel, would you note your appearances?

12            MR. SCHLEICHER:  Good afternoon, Your Honor.

13  Steve Schleicher, Assistant United States Attorney.

14            MS. ALLYN:  Julie Allyn for the United States.

15            MR. SCHLEICHER:  Your Honor, I'm also joined at

16  counsel table by the three case agents on the matter:  FBI

17  Agent Shane Ball, BCA Agent Ken McDonald and Stearns County

18  Sheriff's Investigator Pam Jensen.

19            THE COURT:  Welcome to all of you.

20            Go ahead.

21            MS. ROE:  Good afternoon, Your Honor.  Katherian

22  Roe on behalf of Mr. Heinrich.  Mr. Heinrich is present.

23            MR. ALIGADA:  Reggie Aligada on behalf of

24  Mr. Heinrich.  He is present.

25            THE COURT:  Good afternoon to both of you.
```

1          Mr. Heinrich, how are you doing today?

2          THE DEFENDANT:  All right, Your Honor.

3          THE COURT:  All right.  Very well.

4          MS. ROE:  Your Honor, before we proceed?

5          THE COURT:  Yes.

6          MS. ROE:  Mr. Schleicher provided us with the

7    original plea agreement.  As you noticed, Mr. Heinrich just

8    came in, so he still needs to sign that.

9          THE COURT:  All right.  Go ahead.

10          **(Counsel confers with defendant.)**

11          MS. ROE:  Mr. Heinrich has now executed the

12    agreement, Your Honor.

13          THE COURT:  All right.  Very well.

14          All right.

15          MR. SCHLEICHER:  Your Honor, if I may approach,

16    would you like the agreement at this time?

17          THE COURT:  You may.  All right.

18          Mr. Heinrich, I understand that you are today

19    going to change your plea to a guilty plea in accordance

20    with the terms of this written plea agreement, is that

21    correct?

22          THE DEFENDANT:  That's correct, Your Honor.

23          THE COURT:  Okay.  Come on over to the lectern

24    for me, please.

25          Mr. Heinrich, before I can accept your guilty

1    plea, I have to make certain findings that are based on the

2    record of this hearing and the record of this case.  Among

3    other things, I need to find that you are competent to make

4    this decision, that you fully understand the consequences

5    of a guilty plea, that there are facts which are admitted

6    and true which would support the conviction and that no one

7    has forced you into taking this action today.

8           I'm going to be asking you questions as part of

9    this proceeding.  Mr. Schleicher and Ms. Roe may also ask

10   you questions during the hearing.  That means you're going

11   to be a witness.  I'm going to have you placed under oath

12   for the purpose of giving testimony.

13          THE CLERK:  Please raise your right hand.

14                    **(Defendant sworn.)**

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  All right.  Mr. Heinrich, do you

17   understand that you are now under oath in this proceeding?

18   If you do answer any of the questions falsely, you could be

19   prosecuted for that.

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Now, if there is any question I ask

22   that you don't fully understand or that counsel asks you,

23   please say that.  We'll try to make the question more clear

24   for you.

25          Also, if you wish to speak privately with Ms. Roe

1    or Mr. Aligada during the course of the hearing, that's

2    perfectly fine.  Just step away from the lectern, and you

3    can converse with them outside of our hearing.

4              All right?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  I'm going to start with a number of

7    preliminary questions before we turn to the plea agreement.

8    First, let me have you state your full name for the record.

9              THE DEFENDANT:  Danny James Heinrich.

10             THE COURT:  How old are you?

11             THE DEFENDANT:  53 years.

12             THE COURT:  And where were you born?

13             THE DEFENDANT:  I was born in Paynesville,

14   Minnesota.

15             THE COURT:  Have you lived in Minnesota your

16   entire life?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  How far did you go in school?

19             THE DEFENDANT:  I have a GED that I obtained in

20   1993.

21             THE COURT:  All right.  You went to, you dropped

22   out of high school?

23             THE DEFENDANT:  Yeah.  That's correct.

24             THE COURT:  During what year?

25             THE DEFENDANT:  10th grade, Your Honor.

1              THE COURT:  Do you have any difficulty reading,

2      writing or understanding English at all?

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  Okay.  Where have you most recently

5      been employed?

6              THE DEFENDANT:  Buffalo Veneer and Plywood in

7      Buffalo, Minnesota.

8              THE COURT:  What type of job was that?

9              THE DEFENDANT:  We make wood products for the

10     cabinet industry.

11             THE COURT:  I see.  Okay.  How long were you

12     employed there?

13             THE DEFENDANT:  Ten plus years.

14             THE COURT:  That's in Buffalo?

15             THE DEFENDANT:  That's correct, Your Honor.

16             THE COURT:  Have you ever been treated for any

17     form of mental disability such as depression or attention

18     deficit disorder, anxiety, any form of mental illness?

19             THE DEFENDANT:  No, Your Honor.

20             THE COURT:  All right.  Have you ever been

21     treated for any form of addiction to drugs or to alcohol?

22             THE DEFENDANT:  No, Your Honor.

23             THE COURT:  Okay.  Do you have any physical

24     issues that are affecting you in any way?

25             THE DEFENDANT:  No, Your Honor.

1      THE COURT:  Okay.  So your mind is clear today?

2      THE DEFENDANT:  Yes, Your Honor.

3      THE COURT:  And you're ready to proceed?

4      THE DEFENDANT:  Yes.

5      THE COURT:  There is a document in this case

6  called an indictment.  It's the written statement of the

7  charges against you.  It has a number of counts involving

8  possession and receipt of child pornography.

9      Have you read through that document, sir?

10      THE DEFENDANT:  Yes, I have, Your Honor.

11      THE COURT:  Do you have any questions at all

12  about the charges against you?

13      THE DEFENDANT:  No, Your Honor.

14      THE COURT:  They're clear to you?

15      THE DEFENDANT:  Yes.

16      THE COURT:  All right.  Now, I want to ask you

17  whether you feel that you have had sufficient time to talk

18  about the case, the charges against you and any defenses

19  that you might have with Ms. Roe or Mr. Aligada?

20      THE DEFENDANT:  I've had sufficient time.

21      THE COURT:  Okay.  And have you been fully

22  satisfied with the advice and the assistance that they have

23  provided to you?

24      THE DEFENDANT:  Yes, I have.

25      THE COURT:  All right.  And you have been in full

1    and complete discussion with your attorneys in the process

2    of negotiating this plea agreement, is that correct?

3              THE DEFENDANT:  That's correct.

4              THE COURT:  Okay.  We're going to turn to the

5    plea agreement now.  In it, Mr. Heinrich, you are agreeing

6    to plead guilty to Count 24 of the indictment.  That

7    charges you with receipt of child pornography in violation

8    of United States law.

9              In return, the United States will ask the Court

10   to dismiss the remaining counts of the indictment at the

11   time of sentencing.  Is that what you intend to do today?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  I will ask you orally later on to

14   state that plea, but before we do that, we need to

15   establish that there are facts which are admitted which

16   would support the conviction.

17             I'm going to ask Mr. Schleicher to lead you

18   through that at this point.

19             MR. SCHLEICHER:  Thank you, Your Honor, and it's

20   the government's intent to first discuss the facts of

21   conviction for the indictment, the charge itself, and then

22   proceed to the additional factual admissions with respect

23   to relevant conduct.

24             THE COURT:  Very well.  Go right ahead.

25             MR. SCHLEICHER:  Mr. Heinrich, as you heard the

1    Court indicate, you're pleading guilty to Count 24 of the

2    indictment, is that right?

3              THE DEFENDANT:  That's correct.

4              MR. SCHLEICHER:  And you need to tell the Court

5    in your own words as best you can what you did that makes

6    you guilty of that particular count.

7              Now, Count 24 is a charge of receipt of child

8    pornography.  Do you understand that?

9              THE DEFENDANT:  I understand.

10              MR. SCHLEICHER:  Do you recall that on July 28,

11    2015, law enforcement officers executed a search warrant at

12    your residence?

13              THE DEFENDANT:  That's correct.

14              MR. SCHLEICHER:  And that was in Wright County,

15    Minnesota, at 55 Myrtle in Annandale, is that true?

16              THE DEFENDANT:  That's true.

17              MR. SCHLEICHER:  That in fact was your residence,

18    is that right?

19              THE DEFENDANT:  That's correct.

20              MR. SCHLEICHER:  And you lived there alone?

21              THE DEFENDANT:  Yes.

22              MR. SCHLEICHER:  During the execution of the

23    search warrant, officers recovered a number of items of

24    evidence, and those items included a computer, which was a

25    Gateway brand desktop computer.

1           Do you recall that?

2           THE DEFENDANT:  Yes.

3           MR. SCHLEICHER:  That was your computer?

4           THE DEFENDANT:  Yes, it was.

5           MR. SCHLEICHER:  And they also recovered a

6   printer, which was a Kodak color printer, is that right?

7           THE DEFENDANT:  That's correct.

8           Excuse me.

9           MR. SCHLEICHER:  Yes.

10          **(Defendant confers with counsel.)**

11          MS. ROE:  That's fine.

12          MR. SCHLEICHER:  Okay.  Now, are you aware that

13  through your attorney that law enforcement, the Bureau of

14  Criminal Apprehension, conducted a forensic examination of

15  the hard drive on the computer?

16          Are you aware of that?

17          THE DEFENDANT:  Yes, I am.

18          MR. SCHLEICHER:  And they found images of child

19  pornography on the computer.  Do you understand that?

20          THE DEFENDANT:  Yes.

21          MR. SCHLEICHER:  And you knew that there were

22  images of child pornography on the computer, is that right?

23          THE DEFENDANT:  That's correct.

24          MR. SCHLEICHER:  You knew that because you

25  intentionally obtained those images for the purpose of

1    viewing them, is that right?

2              THE DEFENDANT:  That's correct.

3              MR. SCHLEICHER:  You obtained these images of

4    child pornography from the Internet, is that right?

5              THE DEFENDANT:  That's correct.

6              MR. SCHLEICHER:  You knowingly did so in that you

7    used what would be a means and facility of interstate

8    commerce, a computer, to receive child pornography over the

9    Internet, is that right?

10             THE DEFENDANT:  That's right.

11             MR. SCHLEICHER:  Now, you have not had access to

12   the particular images that law enforcement seized because

13   you are prohibited from doing so, is that right?

14             THE DEFENDANT:  That's correct.

15             MR. SCHLEICHER:  Since the time of your arrest,

16   correct?

17             THE DEFENDANT:  That's correct.

18             MR. SCHLEICHER:  You knew what was on the

19   computer generally before your arrest?

20             THE DEFENDANT:  Yes.

21             MR. SCHLEICHER:  But after, you haven't been

22   shown those particular images, but you have discussed the

23   existence of these images with your defense counsel, is

24   that right?

25             THE DEFENDANT:  That's right.

1          MR. SCHLEICHER:  Directing you then specifically

2     as to Count 24 of the indictment, Count 24 of the

3     indictment, there was a particular image, and that was

4     saved under the file name LOD398.JPG.

5          Do you understand that?

6          THE DEFENDANT:  I understand.

7          MR. SCHLEICHER:  And that's just the file name

8     associated with a particular image.  According to the BCA

9     forensic examination, this image was received by you

10    through the Internet on the computer on March 1, 2014.  Do

11    you have any reason to dispute that date?

12         THE DEFENDANT:  No, I don't.

13         MR. SCHLEICHER:  You downloaded that particular

14    image from the Internet, is that right?

15         THE DEFENDANT:  Yes, I did.

16         MR. SCHLEICHER:  And you knew that this was an

17    image of child pornography, correct?

18         THE DEFENDANT:  That's correct.

19         MR. SCHLEICHER:  And you did not download this by

20    accident or some type of mistake, is that right?

21         THE DEFENDANT:  That's right.

22         MR. SCHLEICHER:  For the record, I need to

23    describe the particular image, which again you have not had

24    access to, but the image depicts a minor female, meaning a

25    female under the age of 18.

1              She has long, brown, curly hair, lying on a bed

2       on a beige blanket.  Her head is resting on a pillow.  She

3       is naked, and her genitals are fully exposed for the

4       camera.

5              You're aware through conversations with your

6       attorneys that the government has in fact that image and

7       has identified it, correct?

8              THE DEFENDANT:  Yes, I'm aware.

9              MR. SCHLEICHER:  And that you received it on

10      March 1, 2014, over the Internet on an interstate

11      communication facility, correct?

12             THE DEFENDANT:  That's correct.

13             MR. SCHLEICHER:  You agree then that the minor

14      being displayed in the image in this manner was engaging in

15      sexually explicit conduct as the law defines it, is that

16      correct?

17             THE DEFENDANT:  That's right.

18             MR. SCHLEICHER:  You also understand that the

19      forensic examination of the computer revealed other images

20      of child pornography, meaning other images of children

21      engaged in sexually explicit conduct, correct?

22             THE DEFENDANT:  That's correct.

23             MR. SCHLEICHER:  And you have no reason to

24      dispute that those images were on your hard drive because

25      you previously downloaded them or retrieved those from the

1      Internet, true?

2              THE DEFENDANT:  That's right.

3              MR. SCHLEICHER:  In addition, during the

4      execution of the search warrant, investigators recovered

5      several binders of printed material from your house, is

6      that right?

7              THE DEFENDANT:  That's right.

8              MR. SCHLEICHER:  These binders also contained

9      images of child pornography, is that true?

10             THE DEFENDANT:  That's true.

11             MR. SCHLEICHER:  You knew that the printed

12     binders of child pornography were there in the residence,

13     is that correct?

14             THE DEFENDANT:  That's correct.

15             MR. SCHLEICHER:  And they were yours and yours

16     alone?

17             THE DEFENDANT:  That's correct.

18             MR. SCHLEICHER:  And you created these

19     collections by printing the pictures and putting them into

20     the binders, is that right?

21             THE DEFENDANT:  That is right.

22             MR. SCHLEICHER:  You understand that by the plea

23     agreement the way the guidelines are calculated, there

24     needs to be a level of the number of images established

25     that you owned, is that right?

1         THE DEFENDANT:  That's right.

2         MR. SCHLEICHER:  Okay.  You do not dispute that

3    you possessed up to 150 images of child pornography between

4    what was in the binders, printed binders, and what was on

5    your computer, correct?

6         THE DEFENDANT:  That's correct.

7         MR. SCHLEICHER:  And among the images, you would

8    agree that these included images of prepubescent minors

9    under the age of twelve, true?

10        THE DEFENDANT:  That's true.

11        MR. SCHLEICHER:  They also included images that

12   portrayed what is called sadistic or masochistic conduct

13   with respect to the children.  I'm going to define that

14   term for you.  You know, specifically as to sadistic and

15   masochistic conduct, images of a minor being penetrated

16   with an object.

17        Do you understand that?

18        THE DEFENDANT:  I understand.

19        MR. SCHLEICHER:  You also agree that those sorts

20   of images would have been present on your computer or in

21   the binders?

22        THE DEFENDANT:  Yes.

23        MR. SCHLEICHER:  You do not dispute that what was

24   portrayed in these different images were in fact real

25   children?

1                THE DEFENDANT:  No, I don't dispute that.

2                MR. SCHLEICHER:  And you would also agree that

3       the images include what we would call images of morphed

4       child pornography, meaning that you actually created

5       certain images by cutting and pasting the photos of what

6       would have at that time been real children onto the nude

7       bodies of other real children?

8                THE DEFENDANT:  That's correct.

9                MR. SCHLEICHER:  And the resulting image showed

10      then a child engaged in sexually explicit conduct, is that

11      right?

12               THE DEFENDANT:  That's right.

13               MR. SCHLEICHER:  All right.

14               Your Honor, the United States is satisfied as to

15      the factual basis for the count of conviction and at this

16      time would like to move into the factual basis with respect

17      to the relevant conduct.

18               THE COURT:  The Court agrees that there is

19      sufficient factual basis for the conviction under Count 24,

20      and you may move to the additional conduct.

21               MR. SCHLEICHER:  Sir, as part of the plea

22      agreement, you understand that you're providing a factual

23      accounting for what happened to Jacob Wetterling on October

24      22, 1989, is that right?

25               THE DEFENDANT:  That's right.

1          MR. SCHLEICHER:  On October 22, 1989, did you

2    kidnap, sexually assault and murder Jacob Wetterling?

3          THE DEFENDANT:  Yes, I did.

4          MR. SCHLEICHER:  I need you to tell the Court

5    what happened on that evening beginning around 8:00 p.m. in

6    the city and town of St. Joseph, that area.

7          THE DEFENDANT:  I was driving on a road, a

8    dead-end road.  I noticed three children on their bicycles

9    with a flashlight.  I pulled into a driveway, passed --

10   after they passed me, turned around and faced the direction

11   of the road that they would be coming back on.

12          Approximately 20 minutes or so later, they came

13   back.  I stepped out of my car.  I put a mask on.  I

14   reached for my revolver.  I proceeded onto the road.  I

15   confronted them.  I told them to get into the ditch with

16   their bicycles.

17          They cooperated.  They did.  I asked their names,

18   their ages.

19          MR. SCHLEICHER:  Do you recall what their answers

20   were?

21          THE DEFENDANT:  Not right offhand, I don't, no.

22          MR. SCHLEICHER:  Do you know now that the three

23   children involved were Jacob Wetterling, Trevor Wetterling,

24   Aaron Larson?

25          THE DEFENDANT:  That's correct.

1          MR. SCHLEICHER:  You indicated that you took out

2     your revolver.  Can you please describe the revolver?  What

3     caliber and type was it?

4          THE DEFENDANT:  .38 Special, Smith & Wesson, snub

5     nose.

6          MR. SCHLEICHER:  After you confronted the

7     children, what did you ask them to do?

8          THE DEFENDANT:  I asked -- well, they offered me

9     a tape, and I knocked that down.  They tried to shine a

10    flashlight in my face, and I said, No, don't do that.

11         MR. SCHLEICHER:  The tape was a videotape?

12         THE DEFENDANT:  Yes.

13         MR. SCHLEICHER:  That they had rented?

14         THE DEFENDANT:  Yes.

15         MR. SCHLEICHER:  From the local store?

16         THE DEFENDANT:  Yes.

17         MR. SCHLEICHER:  Okay.

18         THE DEFENDANT:  Yes.  Yes.

19         MR. SCHLEICHER:  After you knocked it down, what

20    did you say to them?

21         THE DEFENDANT:  I told Trevor and Aaron to run

22    away, not look back or I would shoot, and I took Jacob back

23    to my car.

24         MR. SCHLEICHER:  What did you do when you took

25    Jacob back to your car?

1          THE DEFENDANT:  I handcuffed him and put him in

2     the front passenger seat of my car.

3          MR. SCHLEICHER:  Did you handcuff him behind his

4     back?

5          THE DEFENDANT:  Yes.

6          MR. SCHLEICHER:  After you handcuffed him, did

7     Jacob Wetterling say anything to you?

8          THE DEFENDANT:  What did I do wrong?

9          MR. SCHLEICHER:  Okay.  What did you do after you

10    placed him in your vehicle?

11         THE DEFENDANT:  I got into the, into my car, and

12    we drove out of town, out of St. Joe.  On the way out of

13    St. Joe, I had the scanner on.

14         A lot of police activity started coming over the

15    radio, so I decided I would head back to my home town of

16    Paynesville.

17         MR. SCHLEICHER:  Now, you said a scanner.  Can

18    you just briefly describe the scanner?

19         THE DEFENDANT:  A Regency 50-channel scanner.

20         MR. SCHLEICHER:  For the purpose of listening

21    to --

22         THE DEFENDANT:  Listening to police calls.

23    That's correct.

24         MR. SCHLEICHER:  Did you instruct Jacob

25    Wetterling to do anything when you were driving --

1          THE DEFENDANT:  I --

2          MR. SCHLEICHER:  -- on that road?

3          THE DEFENDANT:  On the way out of St. Joseph, I

4     told him to duck down, lean forward in the seat.  When we

5     got out of St. Joe, I told him he could sit back up.

6          MR. SCHLEICHER:  Did he make any statements to

7     you at that time?

8          THE DEFENDANT:  No.  No, he did not.

9          MR. SCHLEICHER:  Could you as best you can please

10    describe the route that you took from the point of the,

11    what would have been the Raisser farm, to the point you

12    ended up?

13         THE DEFENDANT:  Got back on the road that the

14    boys were on.  We headed not to Main Street, but back to, I

15    don't know, Highway 75, whatever, that runs back to

16    St. Cloud, that direction, but we headed west on that road.

17         And I got on the interstate and headed north to

18    Albany.  From Albany, I got off the interstate and hit

19    another country -- county road that went to Roscoe,

20    Minnesota, and then from Roscoe, I headed east or west on

21    23 to Paynesville.

22         MR. SCHLEICHER:  Okay.  And where specifically in

23    Paynesville did you go?

24         THE DEFENDANT:  I went to that -- when I got to

25    Paynesville, before I got to Paynesville, I turned on the

1    sewage pond road.  About 100 yards up that road, there is

2    an approach and -- to a field next to a grove of trees.

3              MR. SCHLEICHER:  And this area, is there also a

4    gravel pit in the area?

5              THE DEFENDANT:  There was then, yes.

6              MR. SCHLEICHER:  This was an area with which you

7    were familiar, is that right?

8              THE DEFENDANT:  Yes, it is.

9              MR. SCHLEICHER:  What happened when you pulled

10   the vehicle into the area near the gravel pit?

11             THE DEFENDANT:  I drove as close as I could to a

12   grove of trees.  I stopped the car.  I got out.  I opened

13   the door for Jacob.  I unhandcuffed him.  I took him over

14   to the edge of the grove of trees.

15             I asked him to undress.  I undressed.  I touched

16   his penis.  He touched my penis.  I had him masturbate.  In

17   about 20 or so minutes, about a half hour later, he said

18   I'm cold, and I said, Okay.  You can get dressed, and I got

19   dressed.

20             MR. SCHLEICHER:  Okay.  I need to clarify a few

21   things.

22             THE DEFENDANT:  Sure.

23             MR. SCHLEICHER:  With the touching, this was

24   something you compelled him to do?

25             THE DEFENDANT:  Yes.

1          MR. SCHLEICHER:  He knew that you were armed, is

2     that right?

3          THE DEFENDANT:  That's right.

4          MR. SCHLEICHER:  And in terms of any other sexual

5     acts performed by you upon Mr. Wetterling --

6          THE DEFENDANT:  No.  No, there was not.

7          MR. SCHLEICHER:  So there was no penetration?

8          THE DEFENDANT:  No penetration.

9          MR. SCHLEICHER:  And no forced oral --

10         THE DEFENDANT:  No.

11         MR. SCHLEICHER:  -- sex?

12         THE DEFENDANT:  No, there was not.

13         MR. SCHLEICHER:  All right.  After you were

14    finished, you indicated that Mr. Wetterling said something?

15         THE DEFENDANT:  He said, I'm cold.  So I said,

16    Okay.  You can get dressed, and I got dressed.  On the

17    way I said --

18         Are you taking me home?  I said I can't take you

19    all the way home.  There is a lot -- you live a town or so

20    away.

21         MR. SCHLEICHER:  What was his reaction to that?

22         THE DEFENDANT:  He started to cry.  I said, Don't

23    cry.

24         MR. SCHLEICHER:  Now, before this point, sir, had

25    you noticed any law enforcement in the area?

1          THE DEFENDANT:  Yes.  On the way back to the car,

2     there was a patrol car that came down the road with no

3     siren with its lights, and it headed east on Paynesville.

4     I panicked.  I pulled the revolver out of my pocket.  It

5     was never loaded until that point.

6          I, I loaded it with two rounds.  I told Jacob to

7     turn around, I had to go to the bathroom.  He didn't know

8     what I was doing.

9          MR. SCHLEICHER:  You told him that you had to go

10    to the bathroom?

11         THE DEFENDANT:  I had to go to the bathroom.  I

12    asked him to turn around.

13         MR. SCHLEICHER:  Did he do so?

14         THE DEFENDANT:  Yes, he did.

15         MR. SCHLEICHER:  And then what happened?

16         THE DEFENDANT:  I, I, I raised the revolver to

17    his head.  I turned my head.  It clicked once because it

18    didn't line up, the first chamber.

19         I pulled, pulled the trigger again.  It went off.

20    I looked back.  He was still standing.  He hadn't fallen.

21    I raised the revolver again and shot him again, and that's

22    when he fell to the ground.

23         MR. SCHLEICHER:  After Jacob Wetterling fell to

24    the ground, at some point did you check and find that in

25    fact he was dead?

1          THE DEFENDANT:  Yes, he was.  I did check.

2          MR. SCHLEICHER:  Just for clarification, were you

3     under the influence of any drugs or alcohol at the time of

4     this?

5          THE DEFENDANT:  No, I was not.

6          MR. SCHLEICHER:  So you were sober, correct?

7          THE DEFENDANT:  Yes.

8          MR. SCHLEICHER:  Okay.  And all of your actions

9     that you took were voluntary of your own free will, is that

10    right?

11         THE DEFENDANT:  Yes.

12         MR. SCHLEICHER:  All right.  After you confirmed

13    that Jacob Wetterling was dead, what did you do?

14         THE DEFENDANT:  I left him, and I went home.

15         MR. SCHLEICHER:  All right.  Where specifically?

16    What --

17         THE DEFENDANT:  Back to 121 Washburn Avenue, the

18    Plaza Apartments, downtown Paynesville.

19         MR. SCHLEICHER:  How long did you remain at your

20    home?

21         THE DEFENDANT:  I -- couple hours or so.

22         MR. SCHLEICHER:  After a couple of hours passed,

23    did you return to the gravel pit area where Jacob

24    Wetterling was lying?

25         THE DEFENDANT:  Yes, I did.

```
1              MR. SCHLEICHER:  What did you do?

2              THE DEFENDANT:  I dragged him off about 100 yards

3       off to the north of the site where I shot him.

4              MR. SCHLEICHER:  What was your purpose in

5       returning to the site?

6              THE DEFENDANT:  To bury him.

7              MR. SCHLEICHER:  And for what reason?

8              THE DEFENDANT:  To hide the body.

9              MR. SCHLEICHER:  Okay.  And you said that you

10      dragged Jacob Wetterling's body from the place where you

11      shot him to about 100 yards off?

12             THE DEFENDANT:  Yes.

13             MR. SCHLEICHER:  Can you describe the area,

14      please?

15             THE DEFENDANT:  It would be to the north of the,

16      of the -- where I shot him.  100 yards to the north,

17      northwest -- northeast.  Correction.

18             I brought a shovel with me, but it wasn't big

19      enough.  So I figured, I remembered there was a

20      construction company next door.  So I thought I would go

21      over there and see if I could find a shovel, or else it

22      would have taken me hours to dig the grave with a little

23      shovel.

24             When I got over there, I noticed there was a Gehl

25      or a Bobcat, and I'm familiar with operating one of those,
```

1    and I remembered where they kept the key.  I found the key,

2    and I started it up.  I drove back to --

3            I turned the lights on to find out where I had

4    left him, and I found him, and I dug a grave with the

5    Bobcat at that site.

6            MR. SCHLEICHER:  Can you, as best you recall,

7    tell us about what time that was that you would have --

8            THE DEFENDANT:  It was after midnight.

9            MR. SCHLEICHER:  And this was a fairly remote

10   area, is that right?

11           THE DEFENDANT:  Yes.

12           MR. SCHLEICHER:  After you dug the grave with the

13   Bobcat, what did you do?

14           THE DEFENDANT:  I placed Jacob in the grave, and

15   then I covered it back up with the Bobcat.

16           MR. SCHLEICHER:  Okay.  And was Jacob wearing all

17   of his clothing at the time.

18           THE DEFENDANT:  Yes, he was.

19           MR. SCHLEICHER:  And can you describe what you

20   recall clothing he was wearing?

21           THE DEFENDANT:  His reflective vest, his red

22   jacket, blue sweat pants.  Tennis shoes came off when I put

23   him into the grave, so I threw them -- I didn't bury them

24   with him in the grave.

25           MR. SCHLEICHER:  Okay.  After you covered Jacob's

1    body back up with the Bobcat, you returned the Bobcat to

2    the construction site?

3            THE DEFENDANT:  Yes, I did.

4            MR. SCHLEICHER:  Did you then return to the site

5    to make any effort to conceal what you did?

6            THE DEFENDANT:  Yes, I did.  I camouflaged the

7    area with grass and brush.  I -- oh, I should say I didn't

8    return with my car.  I walked back to the scene then.

9            MR. SCHLEICHER:  You had walked back to the scene

10   from your --

11           THE DEFENDANT:  From my --

12           MR. SCHLEICHER:  -- Paynesville --

13           THE DEFENDANT:  From my apartment.  That's

14   correct.

15           MR. SCHLEICHER:  All right.  And then after you

16   returned the Bobcat and camouflaged the site, did you walk

17   back home?

18           THE DEFENDANT:  I walked back home and threw his

19   tennis shoes into a ravine about another 100 yards down the

20   road.

21           MR. SCHLEICHER:  What was your purpose in

22   removing the shoes and throwing them --

23           THE DEFENDANT:  I, I just noticed that I hadn't

24   buried them with him so --

25           MR. SCHLEICHER:  All right.  And then you

1      returned home?

2                  THE DEFENDANT:  That's correct.

3                  MR. SCHLEICHER:  Mr. Heinrich, at some point

4      approximately a year later, did you return to the site

5      where you had buried Jacob Wetterling's body?

6                  THE DEFENDANT:  Yes, I did.

7                  MR. SCHLEICHER:  Could you please describe what

8      you saw when you drove by the site?

9                  THE DEFENDANT:  I didn't drive.  I walked back

10     again.  I walked back.  It was late at night again,

11     probably around midnight, with a flashlight.  I noticed --

12     I shined the area and noticed that the grave was partially

13     uncovered.

14                 You could see his red jacket.

15                 MR. SCHLEICHER:  Above the ground?

16                 THE DEFENDANT:  Above the ground.

17                 MR. SCHLEICHER:  Did you see anything else in the

18     area that caught your attention that would have been by the

19     grave site?  Vegetation or --

20                 THE DEFENDANT:  Nothing, none at that time --

21     well, yes, there was a tree growing in that -- excuse me.

22     There was a small tree growing in that area or a bush.  I

23     don't know.  A tree or a bush.

24                 MR. SCHLEICHER:  All right.  Did that cause you

25     concern, that you could see the jacket?

1          THE DEFENDANT:  Yes, it did.

2          MR. SCHLEICHER:  What did you do?

3          THE DEFENDANT:  I, I, I can't remember.  I had a

4   bag with me, a garbage bag.  I placed as many -- his

5   jacket, his bones, his skull into that bag to move.  I

6   figure I've got to move it.

7          MR. SCHLEICHER:  You had a shovel with you?

8          THE DEFENDANT:  I had an army entrenching tool

9   with me.

10          MR. SCHLEICHER:  So you dug up as many of the

11   remains as you could gather?

12          THE DEFENDANT:  I never dug any.  It was already

13   that uncovered.

14          MR. SCHLEICHER:  Okay.

15          THE DEFENDANT:  I never dug up anything.  I

16   gathered up as much as I could and put it into the bag and

17   transported it across the highway there to his final

18   resting spot.

19          MR. SCHLEICHER:  All right.  You walked over

20   across the highway to a location of a rural farm in rural

21   Paynesville, is that right?

22          THE DEFENDANT:  That's correct.

23          MR. SCHLEICHER:  Fairly close to the original

24   place where you had buried Jacob Wetterling the year

25   before?

1          THE DEFENDANT:  That's correct.

2          MR. SCHLEICHER:  What did you do when you

3     transferred the remains to this farm property?

4          THE DEFENDANT:  I found a spot.  I dug a hole

5     with the trenching tool about two feet deep.  I took his

6     jacket out of the bag.

7          I can't remember what other clothing.  Just the

8     jacket I remember, and I put the bones in that hole and

9     then his jacket on top and covered it up and left.

10          MR. SCHLEICHER:  Obviously you were arrested

11     sometime after the search warrant was executed at your

12     Annandale residence.  So it would have been about 25 years

13     later.

14          Wednesday, August 31, 2016, last week, you were

15     transported in custody by law enforcement to the site where

16     you had buried Jacob's remains for the second time, is that

17     right?

18          THE DEFENDANT:  That's correct.

19          MR. SCHLEICHER:  And you were in custody the

20     entire time, is that correct?

21          THE DEFENDANT:  Yes.

22          MR. SCHLEICHER:  Handcuffed?

23          THE DEFENDANT:  Yes.

24          MR. SCHLEICHER:  And secured.

25          You showed law enforcement the location of that

1    second grave site as best you were able, is that right?

2          THE DEFENDANT:  That's correct.

3          MR. SCHLEICHER:  And after you pointed out the

4    location of the grave site, you were transported in custody

5    away from the scene and were returned to jail, is that

6    right?

7          THE DEFENDANT:  That's correct.

8          MR. SCHLEICHER:  And is it fair to say that you

9    acted alone in the kidnap, sexual assault and murder of

10   Jacob Wetterling?

11         THE DEFENDANT:  That is correct.

12         MR. SCHLEICHER:  At this time, if I could turn

13   your attention then to the date of January 13, 1989, the

14   abduction and sexual assault of Jared Scheierl.

15         Are you prepared to discuss that?

16         THE DEFENDANT:  Yes, I am.

17         MR. SCHLEICHER:  Now, on January 13, 1989, did

18   you in Cold Spring, Minnesota, Stearns County, abduct and

19   sexually assault Jared Scheierl?

20         THE DEFENDANT:  Yes, I did.

21         MR. SCHLEICHER:  Who at the time was a young boy,

22   is that correct?

23         THE DEFENDANT:  That's correct.

24         MR. SCHLEICHER:  Can you please describe what

25   happened between approximately 9:00 and 10:00 that evening

1    in Cold Spring?

2              THE DEFENDANT:  I was driving around Cold Spring

3    looking for a child.  I came onto a dark street, no street

4    lights.  I noticed a boy walking.  I stopped my car.  I

5    rolled my window down.  I asked if he knew where Kramers

6    live.

7              He started to point directions to me.  I said

8    could you hold on for a second.  I got out of the car.  I

9    grabbed him.  Opened up my back door to my car.  I threw

10   him in.  Told him to stay low.  I headed out of Cold

11   Spring.  I don't know the road, but west out of Cold Spring

12   up a hill.

13             In towards Richmond, I got on a gravel road.

14   Went down this gravel road.  Got to a farm place, kind of a

15   winding road to the left.  I stopped the car.  I got out of

16   the car and got into the backseat.  I asked Jared to get

17   undressed, to pull his pants down.

18             I attempted oral, oral, oral inter -- on Jared.

19             MR. SCHLEICHER:  Oral sex?

20             THE DEFENDANT:  Oral sex on Jared.  That didn't

21   work out too good.  So I asked him to perform oral sex on

22   me.

23             MR. SCHLEICHER:  Did he comply?

24             THE DEFENDANT:  Yes, he did.

25             MR. SCHLEICHER:  As a result of that, did you

1    ejaculate?

2                THE DEFENDANT:  Yes, I did.

3                MR. SCHLEICHER:  Did you issue any instructions

4    to Mr. Scheierl?

5                THE DEFENDANT:  Yes, I did.  I said, Swallow.  If

6    you throw up, I'll kill you.

7                MR. SCHLEICHER:  All right.  Did you attempt anal

8    penetration?

9                THE DEFENDANT:  Yes, I did, but I stopped.

10               MR. SCHLEICHER:  Okay.  After you were done

11   sexually assaulting Jared, what did you do?

12               THE DEFENDANT:  I had to climb over to the front

13   seat because it had childproof locks on the doors.  I

14   couldn't open the doors, and then I drove back towards Cold

15   Spring, same direction.

16               I stopped on the road that went up this hill.  I

17   can't -- I don't know the street.  I, I -- well, before

18   that, I told him to give me his pants and his underwear.

19   He could get dressed.  That's right.  Then I, then I left.

20               MR. SCHLEICHER:  You kept those items, the pants

21   and the underwear?

22               THE DEFENDANT:  Yes, I did.

23               MR. SCHLEICHER:  For what purpose?

24               THE DEFENDANT:  Souvenir, I guess.

25               MR. SCHLEICHER:  Then what?

1      THE DEFENDANT:  Then I drove him back towards

2  Cold Spring.  I had him get out of the car.  I don't

3  remember asking him to roll around in the snow, but I must

4  have.

5      I told him to run, not to look back or I would

6  kill him, and I got in my car, and I left.

7      MR. SCHLEICHER:  And you have had an opportunity

8  to read various accounts of what Jared said happened that

9  day, and generally, are they consistent with your memory?

10      THE DEFENDANT:  Yes, they are.  They're correct.

11      MR. SCHLEICHER:  Had you ever met Jacob

12  Wetterling before the night you abducted him?

13      THE DEFENDANT:  No.

14      MR. SCHLEICHER:  Had you ever met Jared Scheierl

15  before the night you abducted him?

16      THE DEFENDANT:  No, I had not.

17      MR. SCHLEICHER:  Your Honor, the government is

18  satisfied with the factual basis as to the relevant conduct

19  incidents.

20      MS. ROE:  I have one question before we move on,

21  Your Honor.

22      THE COURT:  Go ahead, Ms. Roe.

23      MS. ROE:  Mr. Heinrich, you indicated that on the

24  night of January 13, 1989, when you abducted Jared

25  Scheierl, I think you threatened to shoot him a couple of

1        times, is that correct, or to kill him?

2                   THE DEFENDANT:  That's correct.  Yes.

3                   MS. ROE:  And did you have a gun at that time?

4                   THE DEFENDANT:  No, I didn't.  I didn't acquire a

5        pistol until the following summer.

6                   MS. ROE:  I have no further questions.

7                   THE COURT:  Anything else, Mr. Schleicher?

8                   MR. SCHLEICHER:  No.  Thank you, Your Honor.

9                   THE COURT:  All right.  The Court finds a

10       sufficient factual basis for the anticipated upward

11       variance in the sentence in this case.

12                  Mr. Heinrich, you're aware that you have certain

13       pending motions in this case.  You're challenging certain

14       evidence that was seized during the search warrant and

15       statements that were made to law enforcement.  You recall

16       that, correct?

17                   **(Counsel confers with defendant.)**

18                  THE DEFENDANT:  Oh, yes, Your Honor.

19                  THE COURT:  Okay.  And there is also a motion

20       dealing with a change of venue that is still pending as

21       well.

22                  You remember that as well?

23                  THE DEFENDANT:  Yes, Your Honor.

24                  THE COURT:  Do you understand that by entering a

25       guilty plea today, you're giving up your right to make

1    those challenges and that those motions would be

2    terminated?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  All right.  Now I want to just

5    discuss some of the remaining aspects of the plea agreement

6    with you because I want to make sure we all understand the

7    nature of this agreement.

8              Paragraph 4 sets forth the statutory penalties

9    for the crime, the receipt of child pornography.  There is

10   a mandatory minimum sentence of five years and a statutory

11   maximum penalty of 20 years.

12             Do you understand that?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  Okay.  And following release from

15   prison, there is a supervised release term that is mandated

16   under federal law.  In this case, it has to be at least

17   five years, and it can be up to a maximum of life.

18             Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And by "supervised release," I mean

21   you're under the supervision of a probation officer if you

22   are released, and then you must follow conditions imposed

23   by this Court.  If there is a violation of any of those

24   conditions, you can be sent back to prison.

25             Do you understand that?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  The fine is a maximum of $250,000.

3      There is a mandatory $100 special assessment, and there may

4      be a restitution award.

5           Do you understand that?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  Okay.  Now, in paragraph 6, the

8      parties have set forth recommended application of the

9      federal sentencing guidelines in this case, again for Count

10     24.

11          I want to go through those and make sure we all

12     understand how the recommendation has been calculated.

13     Okay?

14          THE DEFENDANT:  Yes.

15          THE COURT:  There is a base offense level at the

16     beginning of the calculation for receipt of child

17     pornography.  That is level 22.  There are a number of

18     specific offense characteristics in this case which would

19     raise that level.

20          The first would be actually a decrease because

21     your conduct in this matter was limited to receipt and

22     solicitation of materials, a two-level increase because the

23     material involved prepubescent minors, a four-level

24     increase because the offense involved materials that

25     portray sadistic or masochistic conduct or other depictions

1    of violence.

2            And this deals with one of the images that

3    depicts anal penetration of a minor; a two-level increase

4    because the offense involved the use of a computer, a

5    two-level increase because the number of images were

6    between 10 and 150, and a five-level increase because you

7    engaged in a pattern of activity involving abuse of minors

8    as depicted in or as detailed in the additional relevant

9    conduct discussed today.

10           Do you understand that?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  There likely would be a three-level

13   downward adjustment for acceptance of responsibility.  That

14   gives us a total offense level of 35.

15           Based on what the parties know at this time, it's

16   the belief that your Criminal History Category is level I.

17   With an adjusted offense level of 32 with the downward

18   adjustment for acceptance, Criminal History Category I, the

19   guideline range for Count 24 is 121 to 151 months in

20   prison.

21           Do you understand that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  And you understand how we reached

24   that number?

25           THE DEFENDANT:  Yes, I do.

1          THE COURT:  Okay.  The fine range at that level

2     is $35,000 up to $350,000, and the guidelines require at

3     least five years and up to a life term of supervised

4     release.

5          And the parties are agreeing and will recommend

6     jointly to the Court that the facts as set forth today and

7     admitted at the hearing today are grounds for an upward

8     variance.

9          You've discussed that with Ms. Roe, is that

10    correct?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.  And that the recommendation

13    will be the statutory maximum of 240 months in prison.  Do

14    you understand that?

15         THE DEFENDANT:  I understand that.

16         THE COURT:  All right.  Now, there is a $100

17    special assessment which would be payable at sentencing.

18    There is no agreement at this point as to restitution.

19    There is a federal statute which requires victim

20    restitution, and that's a matter that will be discussed

21    later at sentencing.

22         Mr. Heinrich, you are also agreeing to forfeit

23    property that was involved in the commission of this crime.

24    The visual depictions, the -- any property that is

25    traceable to the -- what you obtained from the offense.

1          In particular, the parties are agreeing you'll

2     forfeit the Gateway desktop computer, Model 510XL, and you

3     are agreeing this property is subject to forfeiture because

4     it was used to commit the offense.

5          You understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Do you anticipate, Mr. Schleicher,

8     any further forfeitures?

9          MR. SCHLEICHER:  Not at this time, Your Honor.

10          THE COURT:  All right.  Now, paragraph 11 is

11     important for us to discuss.  You understand, Mr. Heinrich,

12     that you have a right, even when you enter a guilty plea in

13     a case, to appeal the sentence, don't you?

14          THE DEFENDANT:  Yes, I do, Your Honor.

15          THE COURT:  And you've talked about this right

16     with Ms. Roe and Mr. Aligada?

17          THE DEFENDANT:  Yes, I have, Your Honor.

18          THE COURT:  You are agreeing in this plea

19     agreement to waive any rights that you have to appeal the

20     sentence unless the sentence exceeds 240 months, is that

21     correct?

22          THE DEFENDANT:  That's correct.

23          THE COURT:  And the government also is waiving

24     its right to appeal the sentence unless it is less than 240

25     months.

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do, Your Honor.

3          THE COURT:  All right.  You're also agreeing to

4     waive your right to file a later petition, which would be a

5     civil action, which would challenge the sentence or the

6     conviction in this case, except if you have a valid claim

7     for ineffective assistance of counsel, which is not

8     waivable.

9          Do you understand that?

10          THE DEFENDANT:  I understand.

11          THE COURT:  All right.  So you understand that

12     this agreement is a negotiated settlement of a number of

13     matters, including charged and uncharged criminal conduct,

14     correct?

15          THE DEFENDANT:  That's correct.

16          THE COURT:  Okay.  So if there is any reason in

17     this case that your conviction is vacated or your sentence

18     is reduced for any reasons, you and the government are

19     agreeing that all parties are restored to your pre

20     agreement rights.

21          Do you understand that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Okay.  And you're specifically

24     waiving any applicable statute of limitations to offenses

25     charged in the indictment, and you're agreeing that at that

1    point any statements made to law enforcement and in court

2    pursuant to this agreement can be used against you in a

3    federal prosecution.

4              Do you understand?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Ms. Roe, you're confident the

7    defendant fully understands these significant rights,

8    correct?

9              MS. ROE:  Yes, Your Honor.

10             THE COURT:  Okay.  Now, paragraph 12, let's

11   discuss that for a moment, Mr. Heinrich.

12             Because of the nature of the crime that you are

13   pleading guilty to, you may be subject, after service of a

14   prison sentence, to civil commitment by state or federal

15   authorities, and there are a number of different statutes

16   that are applicable, and it could be state law or federal

17   law or the law of any other jurisdiction.

18             Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Okay.  None of us at this point have

21   any control or any understanding of what might happen at

22   that point in time.

23             You understand that, correct?

24             THE DEFENDANT:  Yes.  Yes, Your Honor.

25             THE COURT:  And that could result in you being

1   confined to a facility after you're released from this

2   sentence.

3            Do you understand that?

4            THE DEFENDANT:  I understand.

5            THE COURT:  And regardless of that, you still

6   wish to plead guilty as set forth in this plea agreement,

7   is that correct?

8            THE DEFENDANT:  Yes, I do, Your Honor.

9            THE COURT:  All right.  This is the complete

10  agreement.

11           Mr. Schleicher, do you want to make any reference

12  to paragraph 13?

13           MR. SCHLEICHER:  I do, Your Honor.  Your Honor,

14  the plea agreement that's been executed is a nine-page

15  document, but it contains two attachments which are made

16  part of and incorporated into the plea agreement.  They're

17  material conditions of the plea agreement.

18           The first is the joint agreement dated August 29,

19  2016, which was signed by the parties on August 30, 2016,

20  which is Attachment 1.  That agreement generally spells out

21  the conditions by which we were able to get to a point

22  where we received location information for the remains and

23  set up what would then eventually become a proffer and a

24  plea.

25           This second attachment, Attachment 2, is the

1     proffer agreement dated and signed September 1, 2016.  It

2     also contains material conditions, material conditions

3     binding upon the plea agreement, and further describe how

4     certain information can be used and what manner by law

5     enforcement.

6             So it is the three agreements, the plea agreement

7     and the two attachments, that constitute the entire

8     agreement.  As to all three agreements, defense counsel has

9     reviewed those thoroughly with their client, and he was

10    made to understand the terms and conditions, and he signed

11    those agreements as well.

12            The agreement also, and specifically the joint

13    agreement, Attachment 1, bears the signatures of the United

14    States Attorney, as well as the Stearns County Attorney,

15    and all of the conditions contained therein are binding

16    upon the state by her agreement.

17            MS. ROE:  Your Honor, if I might?

18            THE COURT:  Go ahead.

19            MS. ROE:  As is indicated, excuse me, as is

20    indicated in the Plea Agreement and Sentencing Stipulations

21    document that will be filed, the point of this and the two

22    agreements that are attached was to have a global

23    resolution of all the issues and all the matters involving

24    the Jacob Wetterling offense and the Jared Scheierl offense

25    and the child pornography, the federal child pornography

1    charges.

2              That's what the three documents entail.

3              MR. SCHLEICHER:  If I could make a record of that

4    as well, Your Honor?

5              THE COURT:  Go ahead.

6              MR. SCHLEICHER:  The resolution of this as a

7    global agreement will then result in the single count of

8    conviction here in federal court of receipt of child

9    pornography, and there will be no further state prosecution

10   in the matter.

11             The -- in agreement with this resolution includes

12   our law enforcement partners:  The Minnesota Bureau of

13   Criminal Apprehension, the Stearns County Sheriff's

14   Department, as well as the Federal Bureau of Investigation,

15   the relevant prosecution authorities, which include Stearns

16   County Attorney Janelle Kendall, the United States Attorney

17   for the District of Minnesota, Andrew Luger, and also

18   through their representatives, the victims and their

19   families, Patty and Jerry Wetterling, as well as Jared

20   Scheierl.

21             THE COURT:  All right.

22             Okay.  Anything else, Ms. Roe?

23             MS. ROE:  No, sir.

24             THE COURT:  So to clarify, then, the state

25   officials have agreed that there will be no state

1    prosecution for the crimes committed in 1989, is that

2    correct?

3              MR. SCHLEICHER:  It is, Your Honor.

4              THE COURT:  All right.

5              Now, Mr. Heinrich, do you understand all of the

6    terms of the plea agreement that we have just gone through?

7              THE DEFENDANT:  Yes, I do, Your Honor.

8              THE COURT:  Do you have any questions at all

9    about the plea agreement and the two additional documents

10   which you have signed?

11             THE DEFENDANT:  No, Your Honor.

12             THE COURT:  Okay.  Has anyone made any other

13   promises to you in an effort to get you to plead guilty in

14   this case?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  Anyone tried to force you to plead

17   guilty in any way?

18             THE DEFENDANT:  No, Your Honor.

19             THE COURT:  You're doing so voluntarily?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And you believe you're guilty of the

22   federal offense in this case?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  All right.  Now, do you understand

25   that this conviction is a felony conviction, correct?

1          THE DEFENDANT:  That's correct, Your Honor.

2          THE COURT:  And if your plea is accepted by the

3    Court, you're going to be adjudged guilty of this offense,

4    and it may deprive you of valuable civil rights that you

5    have, including the right to vote, the right to hold public

6    office, the right to serve on a jury and the right to

7    possess any kind of firearm.

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  All right.  Now, I have to go through

10   some matters to make sure you understand what you're giving

11   up by your guilty plea here today.

12          There is one right that you are not giving up.

13   You have the right to be represented by legal counsel at

14   all stages of this proceeding.  If you cannot afford a

15   lawyer, the Court will provide a lawyer for you at all

16   stages, even if you would decide to go to trial, and you're

17   not giving up that right today.

18          Do you understand that?

19          THE DEFENDANT:  Yes, I understand.

20          THE COURT:  Okay.  There are rights that you are

21   giving up.  They are rights that are associated with the

22   right to go to trial.  You have the right to plead not

23   guilty to the offenses that are charged against you and to

24   continue that plea throughout all proceedings here in

25   federal court.

1          You have a right to have your case heard quickly.

2    If you want to go to trial, the Court will provide a trial

3    date quickly for you.  The statutory right is 70 days.

4    This case has lasted a little bit longer for a multitude of

5    reasons, but the point is, if you want to go to trial, you

6    could go to trial right away.  That is a right that you

7    have.

8          You have a right to see all the evidence that the

9    prosecutor has and is prepared to use against you, and you

10   have the right to challenge that evidence if you believe

11   it's been secured or taken inappropriately or if there is

12   some other reason why it is inadmissible.  Those are rights

13   that you have exercised, and you have challenged, and those

14   are rights that you are giving up today as we discussed

15   earlier.

16         You have a right to have your case heard by a

17   jury, which means that a jury will decide whether you're

18   guilty or not guilty, not a judge, and by "jury," I mean

19   that 40 or 45 individuals randomly drawn from the state of

20   Minnesota would be called in, summoned as we call it.

21         And then you and Ms. Roe and Mr. Aligada have a

22   right to help choose twelve jurors for the case.  So you

23   have a right to help choose a fair and impartial jury.  The

24   jury in the end will decide whether you're guilty or not

25   guilty.

1          You are presumed innocent of these charges.  That

2     presumption means that the burden falls entirely on the

3     prosecutor to come forward with evidence, and the

4     prosecutor must prove you guilty beyond a reasonable doubt

5     on each of the counts before you can be found guilty on all

6     of them.

7          You don't have to present any defense at all.

8     You don't have -- you have no burden to prove during this

9     case.  It's the government's burden to prove you guilty,

10    and the government must prove you guilty beyond a

11    reasonable doubt, which is a very, very high standard to

12    meet.

13         You have an absolute right not to testify during

14    the trial.  No one can force you to testify.  The

15    Constitution protects you from being compelled to testify

16    during a criminal proceeding.  You may voluntarily waive

17    that right and testify in your own defense if you wish, but

18    it's your decision and no one else's.

19         You have the right to be present throughout the

20    trial to see and hear the witnesses called, and you have

21    the right to have them cross-examined by your lawyer.  You

22    also have a right, in addition to seeing the evidence that

23    the government has, you have a right to collect evidence

24    from third parties, using the Court's subpoena power.

25         You can also use that power to summon witnesses

1      that you would like to have testify for you.  These are all

2      rights that you give up when you enter a guilty plea.

3               After the trial is over, the jury would

4      deliberate to determine whether the prosecutor has proven

5      the case beyond a reasonable doubt.  If the jury finds that

6      the prosecutor has indeed met that burden and you're found

7      guilty, you have a right to appeal that decision to the

8      Court of Appeals.

9               If you are found not guilty on any of the charges

10     against you, the case is over because the government cannot

11     appeal a jury's not guilty verdict.

12              Now do you understand today, Mr. Heinrich, that

13     by entering a guilty plea, if the Court accepts that plea,

14     then there will be no trial, and you will have given up

15     these rights that I have just described for you?

16              THE DEFENDANT:  Yes, I do, Your Honor.

17              THE COURT:  Do you have any question about these

18     rights at all?

19              THE DEFENDANT:  No, I do not.

20              THE COURT:  All right.  I'm going to ask

21     Mr. Heinrich in a moment to state orally how he intends to

22     plead.

23              Before I ask him to do that, Mr. Schleicher, is

24     there anything else we should have on the record of this

25     hearing?

```
 1              MR. SCHLEICHER:  May I have one moment, Your

 2      Honor?

 3              THE COURT:  Yes.

 4                    (Counsel confer.)

 5              MR. SCHLEICHER:  Nothing from the United States,

 6      Your Honor.

 7              THE COURT:  All right.

 8              Ms. Roe, is there anything else you would like to

 9      address?

10              MS. ROE:  No, Your Honor.  Nothing.

11              THE COURT:  Okay.

12              Mr. Heinrich, you are charged in Count 24 of the

13      indictment in this case with the crime of receipt of child

14      pornography in violation of United States law.

15              How do you now plead to that charge, guilty or

16      not guilty?

17              THE DEFENDANT:  Guilty.

18              THE COURT:  It is the finding of the Court in the

19      case of the United States of America versus Danny James

20      Heinrich that the defendant, Mr. Heinrich, is fully

21      competent.  He is capable of entering an informed plea to

22      this charge.

23              Further, the Court finds that Mr. Heinrich is

24      fully aware of the nature of the charge brought against him

25      and that he understands the potential consequences of a
```

1    guilty plea.

2          Further, the Court finds the guilty plea to be

3    knowing and voluntary and supported by a sufficient factual

4    basis.  That finding also includes a factual basis for the

5    anticipated variance, upward variance, for the sentence.

6    The Court will therefore accept Mr. Heinrich's guilty plea,

7    and he is now adjudged guilty of this offense.

8          Further, the Court will accept the plea agreement

9    and its other two supporting documents.  The Court will set

10   as a sentencing date in this case Monday, November 21st, at

11   10:00 a.m.

12         Right now, Mr. Heinrich, I will refer you to the

13   United States Probation Office, which will complete a

14   presentence investigation for the Court.  This is

15   information that the Court needs in order to make

16   sentencing decisions in this case.

17         It's important.  Please cooperate with the

18   probation officer.  You may have either or both of your

19   attorneys present with you when you are interviewed by the

20   probation officer.  After the investigation has been

21   completed by the probation office, there will be a draft

22   written report.

23         I encourage you to read that report carefully, to

24   go over it carefully with your attorneys.  If there is any

25   objection to anything in that report, Ms. Roe or

1    Mr. Aligada can raise those objections with the probation

2    officer.

3              Often we can resolve objections informally.  If

4    there are objections that cannot be resolved in that way,

5    Mr. Heinrich, I will resolve them at the sentencing hearing

6    after hearing argument from each side and taking additional

7    evidence if that is necessary.

8              Please remember that at the sentencing hearing

9    you have a right to speak.  I will give you that

10   opportunity before I make any final sentencing decisions in

11   this case.

12             Do you have any questions about the process

13   moving forward?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  All right.

16             Mr. Schleicher, is there anything else that we

17   should address today?

18             MR. SCHLEICHER:  I assume the defendant will

19   remain in custody.  Other than that, nothing from the

20   government.

21             THE COURT:  Yes, he will.

22             Anything from you, Ms. Roe?

23             MS. ROE:  No, Your Honor.  Nothing further.

24             THE COURT:  All right.  The Court will order that

25   Mr. Heinrich remain in the custody of the Marshal's Service

1    pending sentencing in this case, and this matter will be

2    continued until Monday, November 21st, for sentencing.

3              Thank you, everyone.  The Court is in recess.

4              THE CLERK:  All rise.

5                         *         *          *

6              I, Kristine Mousseau, certify that the foregoing

7    is a correct transcript from the record of proceedings in

8    the above-entitled matter.

9

10   Certified by:  s/  Kristine Mousseau, CRR-RPR
                        Kristine Mousseau, CRR-RPR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25